**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **K.M.**

**No. 21-0473** (Braxton County 20-JA-43)

**MEMORANDUM DECISION**

Petitioner Father B.M., by counsel Andrew C. Shaffer, appeals the Circuit Court of Braxton County's May 14, 2021, order terminating his parental rights to K.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem, Julia R. Callaghan, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred by (1) rescinding his post-dispositional improvement period; (2) finding that the allegations of abuse and neglect were not correctable as a matter of law; (3) allowing a witness to testify without providing notice of new testimony; and (4) terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2020, the DHHR filed an abuse and neglect petition alleging that petitioner used then four-year-old K.M. to gain access to underage girls and displayed pornographic pictures to those girls. The DHHR further alleged that it received a referral that petitioner had a history of domestic violence and "had been showing young girls naked pictures of himself." According to the petition, petitioner allegedly went to the home of two minor girls, both thirteen years old, and showed the girls pictures of himself naked. The DHHR alleged that petitioner used K.M. as a pretext to gain access to the home where the girls resided and that he represented to the girls' mother that he was "trying to facilitate socializing between her girls and the child [K.M.]." The

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

DHHR alleged that the father of the young girls confronted petitioner regarding his display of nude photographs to the girls. According to the petition, upon being confronted by the girls' father, petitioner threw K.M. in front of himself before retreating into his vehicle, driving away from the residence, and leaving K.M. at the girls' residence. The DHHR alleged that K.M. ran after petitioner's vehicle, pleading with petitioner to stop the vehicle. Petitioner eventually stopped and let the child into the vehicle.

According to the petition, a Child Protective Services ("CPS") worker visited the girls' home that same day, and the girls' parents indicated that petitioner had visited their home four times that day. On the first occasion, the parents reported that petitioner parked across the street, blew the vehicle horn, and motioned for the girls to come over to his vehicle. The mother stated that she exited her home to see who was blowing the horn in front of their residence, and petitioner informed her that he was blowing the horn at his "friend." Petitioner then left the premises. The mother stated that petitioner returned a second time and attempted to coax the girls into his vehicle, but the children retreated into their home. According to the petition, the mother alleged that petitioner brought K.M. with him on the third occasion under the guise of setting up a play date with K.M. and the girls. The mother stated that petitioner showed her a picture of a dog on his cell phone and asked if the children would like to see the picture. However, when petitioner showed the picture to the girls, it was a picture of petitioner's "sexual organ." The girls' father indicated that petitioner returned to their home a fourth time, again with K.M. The father stated that he intended to assault petitioner as a result of the inappropriate pictures he showed to his daughters, but petitioner grabbed K.M. and used her as a "shield" while petitioner ran to his vehicle. After visiting the girls' parents, the CPS worker interviewed K.M.'s mother and maternal grandmother. They told the CPS worker that petitioner had a history of showing pictures of his genitals to others, but they had never known of him showing the pictures to minors prior to this incident. Finally, the CPS worker interviewed K.M. who acknowledged that she had been with petitioner at the girls' home. The child also disclosed that petitioner had a "secret" cell phone that he allowed her to play with while she was visiting him. According to the petition, petitioner was arrested as a result of the incident and charged with displaying pornographic material to a minor.

The circuit court held an adjudicatory hearing in October of 2020, which was continued by agreement of the parties. At the hearing, the court ordered that petitioner may have telephonic visits with K.M., with the nonabusing mother supervising the calls. The court ordered that petitioner submit to a psychological evaluation with substance abuse and parental fitness components. The court further ordered that petitioner shall obtain employment, maintain suitable housing, submit to drug screening, and participate in parenting and adult life skills classes.

The circuit court held the continued adjudicatory hearing in December of 2020 wherein the DHHR put on evidence in support of the allegations in the petition. Specifically, the DHHR demonstrated that petitioner used K.M. as a pretext to show pictures of his penis to two young girls and used K.M. as a "human shield" to flee the girls' residence. One of the young girls, her father, and her mother all testified and identified petitioner as the perpetrator in the incident. Finally, petitioner testified and denied the allegations.

After hearing the evidence, the circuit court found that all three witnesses from the girls' family identified petitioner on the record and none of them had any reason or incentive to make

false allegations. The court further found that petitioner had a self-interest and incentive to deny the allegations as he was facing adjudication. The court found that by using K.M. as a pretense to engage in felonious sexual criminal conduct, and by using her as a human shield when confronted about said conduct, petitioner placed the child at great risk of physical and emotional harm. As a result, the circuit court adjudicated petitioner as an abusive and neglectful parent. The court further ordered the DHHR to reschedule petitioner's psychological evaluation.

In February of 2021, the circuit court held a dispositional hearing wherein the DHHR requested a continuance because it had just received petitioner's psychological evaluation the day prior to the hearing. Petitioner did not object to continuing the hearing and noted that K.M. "was in need of a [Child Advocacy Center] interview or a psychological evaluation due to the fact that the child is refusing to visit or speak telephonically with [petitioner]." The guardian noted that she initially supported telephonic visits between petitioner and the child. However, the guardian explained that since the circuit court granted such visits, the child did not want to speak with petitioner. As such, the guardian believed that telephonic visits were no longer in the best interests of the child. After the hearing, the guardian filed a motion to terminate petitioner's parental rights based on the results of the psychological evaluation and petitioner's failure to acknowledge the conditions of abuse and neglect. Petitioner filed a motion for a post-adjudicatory improvement period.

The circuit court held a continued dispositional hearing in March of 2021 wherein it considered petitioner's motion for an improvement period. The DHHR supported petitioner's motion while the guardian objected. The guardian noted that she had filed a motion to terminate petitioner's parental rights based upon the psychological evaluation. At the hearing, a CPS worker testified that K.M. was currently living with her nonabusing mother. The worker stated that the child refused to visit or speak with petitioner, despite petitioner having two telephonic visits per week with the child. The worker testified that the DHHR was supportive of petitioner's motion for an improvement period because it believed that petitioner had not been offered enough services. The worker explained that petitioner was participating in parenting and adult life skills classes and had taken steps to achieve sobriety. The worker noted that petitioner had yet to achieve other goals, including obtaining independent housing, full-time employment, and long-term sobriety. The worker stated that petitioner completed a psychological evaluation and would need to follow all recommendations made by the evaluator, including psychotherapy for his inappropriate sexual behavior. The worker acknowledged that the psychological evaluation reflected a "poor" prognosis as to petitioner's ability to improve his parenting skills. However, the worker stated that the DHHR believed "there is something that can be done to overcome the poor prognosis." The worker also opined that telephonic contact between petitioner and K.M. "may not be going well due to the age of the [then five-year-old] child." The worker noted that petitioner had been enrolled in Suboxone treatment since October of 2020 and had not had any positive drug screens since that time. Next, petitioner presented two witnesses from his Suboxone treatment program. Petitioner proffered what their testimony would be and submitted records from his program as evidence. Finally, the guardian indicated that she would present two witnesses, including the psychologist who conducted petitioner's evaluation. However, the court continued the hearing to allow the other parties to present additional witnesses.

Later that month, the circuit court held a continued dispositional hearing for the purpose of hearing additional witness testimony. However, the court did not ask the parties if they were prepared to present their witnesses. Instead, the court took judicial notice of testimony from the prior hearings and asked petitioner whether he would comply with the terms and conditions of an improvement period. After petitioner was sworn by the court, he testified that he would comply with an improvement period. As a result, the court granted petitioner a post-dispositional improvement period without hearing additional testimony. Following the court's findings and orders, the guardian noted her objection to the improvement period because she was not permitted the opportunity to present her witnesses that she had disclosed to the court at the prior hearing.

In April of 2021, the guardian filed a motion for the circuit court to consider additional evidence in the proceedings. The motion requested that the guardian be permitted to present the testimony of the previously disclosed witnesses, the psychological evaluator, and the child's visitation provider. The court held a hearing later that month wherein the visitation provider testified that petitioner engaged in coercive behavior during telephone calls with the child in October through December of 2020. The service provider testified that she had to redirect petitioner and ask him to change subjects because he told the child he was going to give her gifts only if she visited him in person. The service provider explained that K.M. became apprehensive and occasionally cried after calls with petitioner. The service provider indicated that after a call in December of 2020 went poorly, K.M. refused to speak with petitioner on the phone. Next, the psychologist testified as to the contents of petitioner's psychological evaluation. The psychologist testified that she did not have access to the adjudicatory hearing order and its findings at the time of the evaluation. As a result of this additional information, the psychologist definitively concluded that petitioner had exhibitionistic disorder. The psychologist testified that petitioner gained sexual gratification from exposing himself to others in a non-consensual manner. The psychologist explained that there were no services available to correct the disorder and that sex offender treatment would not be compatible with reunification services. The psychologist further testified that petitioner's coercive behavior during the supervised telephone contact with the child was inappropriate and expressed concern that it occurred during a telephone call petitioner knew was supervised. The psychologist explained that petitioner's actions reflected poor impulse control and were extremely problematic. The psychologist further testified that she had performed over 800 evaluations and never had a stronger opinion about the need to protect a child. As a result, the psychologist recommended that petitioner not have custody or unsupervised contact with the child.

After the presentation of evidence, the circuit court found that, although petitioner had participated in parenting and adult life skills classes and was participating in a medically assisted treatment program, he had not taken responsibility for his actions and had not admitted any wrongdoing. The court further found there were "no services that [could] be provided to the [petitioner] to overcome his exhibitionistic disorder diagnosis and safely return custody" of the child to him. The court also found that granting him a post-dispositional improvement period was premature without hearing from the guardian's witnesses. Additionally, the court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect and that termination of his parental rights was necessary for the child's welfare. Therefore,

the court terminated petitioner's parental rights.[2] It is from the circuit court's May 14, 2021, dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that the circuit court erred in rescinding the previously granted improvement period. Petitioner argues that he committed no violations during the improvement period and was compliant with the same, so rescinding his improvement period was a violation of his due process rights. In light of this, he argues that he should have been afforded the opportunity to participate further in the improvement period. We disagree.

As we have explained, a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period.'" *In re Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004) (citation omitted). Here—despite the circuit court initially granting petitioner an improvement period—the record shows that petitioner failed to satisfy this burden. Moreover, the circuit court prematurely granted petitioner an improvement period before it had the opportunity to consider all of the evidence. The guardian objected to the provision of an improvement period and explained to the court that she had two witnesses to present at a future hearing that supported her objection to such improvement period. At that later hearing, the circuit court did not consider the testimony of the guardian's witnesses and, instead, prematurely granted petitioner an improvement period. However, once the guardian presented additional evidence, it was clear that petitioner was engaging in coercive behavior during telephonic visits with the child by promising her gifts for future visits despite knowing there were no in-person visits permitted. The record reflects that the calls upset the child so much that she refused to participate in future calls with petitioner after just three calls. Further, while it may be true that petitioner was compliant with attending parenting and adult life skills classes and participating in a medically assisted treatment program, the record below shows that petitioner still failed to obtain independent

---

[2]The mother is a nonabusing parent, and the child has achieved permanency in her care.

housing or maintain full time employment. Petitioner's psychological evaluation also reflected a poor prognosis as to his ability to improve his parenting skills.

Even more importantly, petitioner refused to acknowledge the conditions of abuse and neglect throughout the proceedings. Specifically, petitioner refused to admit any wrongdoing at the dispositional hearing where the circuit court initially granted him an improvement period. As this Court has explained,

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Based on this evidence, it is clear that petitioner not only failed to satisfy the applicable burden to obtain an improvement period but also was not entitled to the same due to his refusal to acknowledge the conditions of abuse and neglect at issue. Accordingly, we find no abuse of the circuit court's discretion in declining to grant petitioner an improvement period. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . .").

Next, petitioner argues that the circuit court erred in determining that the allegations of abuse and neglect were not correctable as a matter of law because petitioner was an alleged sex offender. Petitioner contends that the circuit court should not have relied on the psychologist's testimony that available treatment was inconsistent with reunification which required the termination of his parental rights. Petitioner argues that the West Virginia Legislature outlined specific acts of abuse and neglect in West Virginia Code § 49-4-604(c)(7) that relieve the DHHR of its statutory obligation to make reasonable efforts to preserve the family at the dispositional phase but that his alleged conduct does not fall within the statute. We find petitioner is entitled to no relief as to this assertion.

While the circuit court made a finding that no services could be provided to overcome his exhibitionistic disorder, it did not do so until disposition, which is functionally the end of the proceedings for petitioner's purposes. Further, petitioner is incorrect that the circuit court relieved the DHHR of its statutory obligation to provide reunification services throughout the proceedings. Petitioner even acknowledges on appeal that "the WVDHHR in this case supported reunification and recommended an improvement period for the [p]etitioner." Petitioner's assertion that the circuit court treated his case as one of aggravated circumstances is belied by the record, which shows that the DHHR offered petitioner parenting and adult life skills classes, telephonic visits with the child, and a psychological evaluation. Petitioner was also participating in a medically assisted treatment program during the proceedings. Most importantly, the court found that petitioner failed to "take[] responsibility for his actions and [did] not admit[] to any wrongdoing whatsoever." As noted above, we have held that a failure to acknowledge the problems that must

be corrected "results in making the problem untreatable." *Timber M.*, 231 W. Va. at 55, 743 S.E.2d at 363. Therefore, the finding that allegations of abuse and neglect were not correctable had no effect on petitioner's receipt of services or any other aspect of the case. Accordingly, we find that the circuit court's finding, if it was erroneous, was harmless under the limited circumstances of this case and that petitioner is entitled to no relief in this regard.[3]

Lastly, petitioner takes issue with the timeframe from adjudication to termination, arguing that he should have been given additional time and an opportunity to demonstrate that he could correct the conditions of abuse and neglect. However, we have previously held that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 4, in part (citation omitted). Further, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Here, the circuit court made the appropriate findings based upon substantial evidence, which this Court addressed above. On appeal, petitioner cannot establish that these findings were in error. As such, we find no error in the termination of petitioner's parental rights.

---

[3]Petitioner raises a third assignment of error regarding the circuit court's decision to allow a psychologist to testify over his objection. Petitioner argues that the expert witness should not have been allowed to testify about new conclusions from the psychological evaluation without providing notice or an amended psychological evaluation report. However, in his brief on appeal, petitioner fails to cite to any legal authority in support of this assignment of error. Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that "[t]he brief must contain an argument exhibiting clearly the *points of* fact and *law presented . . . and citing the authorities relied on*, under headings that correspond with the assignments of error." (Emphasis added). Additionally, in an Administrative Order entered December 10, 2012, Re: Filings That Do Not Comply With the Rules of Appellate Procedure, the Court specifically noted in paragraph two that "[b]riefs that lack citation of authority [or] fail to structure an argument applying applicable law" are not in compliance with this Court's rules. Further, "[b]riefs with arguments that do not contain a citation to legal authority to support the argument presented and do not 'contain appropriate and specific citations to the record on appeal . . .' as required by rule 10(c)(7)" are not in compliance with this Court's rules. Here, petitioner's brief regarding this assignment of error is inadequate, as it fails to comply with West Virginia Rule of Appellate Procedure 10(c)(7) and our December 10, 2012, administrative order. Accordingly, the Court will not address this assignment of error on appeal.

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 14, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: January 12, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice William R. Wooton